Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile:  (212) 754-0777

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

| | | |
|---|---|---|
| In Re | : | Chapter 11 |
| | : | |
| LIDDLE & ROBINSON, L.L.P.,[1] | : | Case No. 19-12346 (SHL) |
| | : | |
| | : | Jointly Administered with 19-10747 (SHL) |
| Debtor | : | |

----------------------------------------------------------x

| | | |
|---|---|---|
| JONATHAN L. FLAXER, not individually but solely in his capacity as the Chapter 11 Trustee of the estate of LIDDLE & ROBINSON, L.L.P., | : : : : | Adv. Pro. No. 20-_____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | |
| COUNSEL FINANCIAL II LLC, LIG CAPITAL LLC and COUNSEL FINANCIAL HOLDINGS LLC, | : : : | |
| | : | |
| Defendant. | : | |

----------------------------------------------------------x

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

3561550.1

## COMPLAINT FOR DECLARATORY RELIEF

Jonathan L. Flaxer, solely in his capacity as the chapter 11 trustee (the "**Trustee**") for the estate (the "**Estate**") of the above captioned debtor (the "**Debtor**"), by his counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, respectfully alleges as follows based on information available to him and otherwise upon information and belief:

### Nature of Adversary Proceeding

1.      By this action, the Trustee seeks a declaration regarding the validity, priority, enforceability and extent of certain security interests granted pre-petition by the Debtor to Counsel Financial II LLC ("**CFII**"), LIG Capital LLC ("**LIG**") and Counsel Financial Holdings LLC ("**CF Holdings**", and collectively with CFII and LIG, "**Counsel Financial**"), particularly with respect to the cash of the Estate from fees that may be generated from current cases as well as past cases in which amounts may remain outstanding.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  By virtue of 28 U.S.C. § 157(a) and the Amended Standing Order of Reference, M-431 dated January 31, 2012 (Preska, C.J.), this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

3.      The Complaint is brought pursuant to 11 U.S.C. §552 and Fed. R. Bankr. P. 7001(2).

4.      Venue of the Complaint in this District is proper pursuant to 28 U.S.C. § 1409(a).

### The Parties

5.      The Trustee is the appointed chapter 11 trustee for the Debtor and its Estate.

6. Upon information and belief, Defendant CFII is a Delaware limited liability company with an office located at 6400 Main Street, Suite 120, Williamsville, NY 14221.

7. Upon information and belief, Defendant LIG is a Delaware limited liability company with an office located at 6400 Main Street, Suite 120, Williamsville, NY 14221.

8. Upon information and belief, Defendant CF Holdings is a Delaware limited liability company with an office located at 6400 Main Street, Suite 120, Williamsville, NY 14221.

## Background

9. On July 22, 2019 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under the Bankruptcy Code. Until December 23, 2019, the Debtor was authorized to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. On or about December 6, 2019, the United States Trustee (the "**United States Trustee**") filed a motion for the appointment of a chapter 11 trustee [Dkt. No. 191; Case No. 19-10747, Dkt. No. 257], and on December 23, 2019, the Court granted that motion directing appointment of a chapter 11 trustee [Dkt. No. 192].

11. On December 23, 2019, the United States Trustee filed a notice appointing Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 193] as well as an application to approve the appointment of Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 195]. The Court approved the United States Trustee's application by order dated January 6, 2020 [Dkt. No. 201].

12. The Debtor was a law firm partnership formed on or about June 4, 1979. Since its formation, the Debtor had a strong litigation practice, led by Jeffrey L. Liddle, with an emphasis on corporate, real estate and employment law. Mr. Liddle was the sole remaining partner of the

Debtor, and thus the Debtor is obligated to wind down in accordance with New York law. The final date of operations was June 30, 2020.

13. Creditors have filed 43 proofs of claim against the Estate (each, a "**Proof of Claim**"). The Court maintains one sequentially numbered list of claims on the claims register based on the order in which the Proofs of Claim were received ("**Claim Number(s)**" or "**Claim No(s).**").

### The CF Claims

14. On September 25, 2020, (i) CFII filed Claim Number 17 with the Bankruptcy Court, (ii) LIG filed Claim Number 18 with the Bankruptcy Court, and (iii) CF Holdings filed Claim Number 19 with the Bankruptcy Court (collectively, the "**CF Claims**")

15. Upon information and belief, the CF Claims relate to the following three pre-petition loans that the Debtor entered into in 2016 and 2017 with CFII, LIG, and CF Holdings, which are three affiliates of Counsel Financial Services LLC:

   a. **Claim No. 17**: Upon information and belief, on August 4, 2016, the Debtor entered into a Revolving Promissory Note and Allonges thereto dated October 13, 2016 and December 21, 2016 with CFII as the lender (collectively, the "**CFII Note**"). The Debtor also executed a Security Agreement dated August 5, 2016 (the "**CFII Security Agreement**"). On March 5, 2019, an Order and Judgment in favor of CFII against the Debtor was entered in the amount of $6,541,924.84. CFII asserts that this amount is the amount outstanding under the CFII Note as of the Petition Date. CFII therefore alleges that it has a lien on all "assets of [D]ebtor" in the amount of $6,541,924.84 (the "**CFII Lien**"). *See* Claim Number 17, section 9.

    b. **Claim No. 18**: Upon information and belief, on October 13, 2016, the Debtor entered into a Term Promissory Note with LIG as the lender (the "**LIG Note**"). The Debtor also executed a Security Agreement, dated October 13, 2016 (the "**LIG Security Agreement**"). As of the Petition Date, LIG asserts that there is $539,007.41 outstanding under the LIG Note. LIG therefore alleges that it has a lien on all "assets of debtor" in the amount of $539,007.41 (the "**LIG Lien**"). *See* Claim Number 18, section 9.

    c. **Claim No. 19**: Upon information and belief, on June 2, 2017, the Debtor executed a Revolving Promissory Note with CF Holdings as the lender (the "**CF Holdings Note**"). The Debtor also executed a Security Agreement dated June 2, 2017 (the "**CF Holdings Security Agreement**" and, collectively with the CF2 Note, CF2 Security Agreement, LIG Note, LIG Security Agreement, and CF Holdings Note, the "**Pre-Petition Credit Documents**", each of which are attached to the respective Proof of Claim). As of the Petition Date, CF Holdings asserts that there is $2,157,154.12 outstanding under the CF Holdings Note. CF Holdings therefore alleges that it has a lien on all "assets of [D]ebtor" in the amount of $2,157,154.12 (the "**CF Holdings Lien**"). *See* Claim Number 19, section 9.

16. Pursuant to the Pre-Petition Credit Documents, the Debtor pledged as collateral the following to secure its obligations under the respective notes (collectively, the "**Collateral**"):

> All of each Debtor's right, title and interest in all Goods (including Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends or other distributions thereon paid and payable in cash or in property; and

> all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing. . . .
>
> The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note[s]), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note[s]).

*See* CFII Security Agreement at Para. 1.b.; LIG Security Agreement at Para. 1.b.; CF Holdings Security Agreement at Para. 1.b. (copies of which are annexed hereto as **Exhibit A**).

17. Prior to the Petition Date, the Debtor entered into arrangements with clients to perform legal services on a contingency fee basis (the "**Contingency Cases**"). As of the Petition Date, a number of the Contingency Cases were pending. Several Contingency Cases have been resolved during the Debtor's chapter 11 case, and Counsel Financial has asserted that all of the recoveries on such Contingency Cases are part of its Collateral.

18. In addition, one of the primary remaining significant assets of the Estate are the contingency fees that may be generated from those Contingency Cases that are still pending and in which the Estate has a continuing interest. Each of the CF Claims state that the CF Liens are secured by "all assets of [D]ebtor". *See* Claim Number 17, section 9; Claim Number 18, section 9; Claim Number 19, section 9.

19. The Trustee disputes the validity and enforceability of the CF Liens with respect to any payments received after the Petition Date that are attributable to services performed by the Debtor after the Petition Date on the Contingency Cases (the "**Attributable Contingency Fees**").

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to 11 U.S.C. § 552(a) that the CFII Lien**
**Does Not Attach to the Attributable Contingency Fees)**

20. Plaintiff repeats and realleges the allegations of paragraphs 1 through 19, as though fully set forth herein.

21. The CFII Note and the CFII Security Agreement together purport to grant a security interest to CFII in the Attributable Contingency Fees.

22. Pursuant to 11 U.S.C. § 552(a), property acquired by the Estate or the Debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

23. Under applicable law, the Attributable Contingency Fees are property acquired by the Estate after the commencement of the case and are therefore not subject to any lien resulting from the CFII Note, the CFII Security Agreement, or any of the Pre-Petition Credit Documents.

24. CFII has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

25. A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the CFII Note, the CFII Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

26. This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

27. The Trustee is entitled to a declaration that CFII does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(a).

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to 11 U.S.C. § 552(b) that the CFII Lien**
**Does Not Attach to the Proceeds of the Attributable Contingency Fees)**

28. Plaintiff repeats and realleges the allegations of paragraphs 1 through 27, as though fully set forth herein.

29. The CFII Note and the CFII Security Agreement together purport to grant a security interest to CFII in the Attributable Contingency Fees.

30. Pursuant to 11 U.S.C. § 552(b), the "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case is subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

31. The Attributable Contingency Fees were generated solely due to the acts of the Debtor after the Petition Date, and therefore, as of the Petition Date, no lien in the proceeds of the Attributable Contingency Fees had attached.

32. Under applicable law, the Attributable Contingency Fees are not "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case that would be subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

33. The Attributable Contingency Fees are therefore not "proceeds" of property acquired by the Estate before the commencement of the case and are therefore not subject to any lien resulting from the CFII Note, the CFII Security Agreement or any of the Pre-Petition Credit Documents.

34. CFII has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

35. A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the CFII Note, the CFII Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

36. This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

37. The Trustee is entitled to a declaration that CFII does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(b).

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to 11 U.S.C. § 552(a) that the LIG Lien Does Not Attach to the Attributable Contingency Fees)

38. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37, as though fully set forth herein.

39. The LIG Note and the LIG Security Agreement together purport to grant a security interest to LIG in the Attributable Contingency Fees.

40. Pursuant to 11 U.S.C. § 552(a), property acquired by the Estate or the Debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

41. Under applicable law, the Attributable Contingency Fees are property acquired by the Estate after the commencement of the case and are therefore not subject to any lien resulting from the LIG Note, the LIG Security Agreement or any of the Pre-Petition Credit Documents.

42. LIG has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

43. A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the LIG Note, the LIG Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

44. This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

45. The Trustee is entitled to a declaration that LIG does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(a).

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to 11 U.S.C. § 552(b) that the LIG Lien Does Not Attach to the Proceeds of the Attributable Contingency Fees)

46. Plaintiff repeats and realleges the allegations of paragraphs 1 through 45, as though fully set forth herein.

47. The LIG Note and the LIG Security Agreement together purport to grant a security interest to LIG in the Attributable Contingency Fees.

48. Pursuant to 11 U.S.C. § 552(b), the "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case is subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

49. The Attributable Contingency Fees were generated solely due to the acts of the Debtor after the Petition Date, and therefore, as of the Petition Date, no lien in the proceeds of the Attributable Contingency Fees had attached.

50. Under applicable law, the Attributable Contingency Fees are not "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case that would be subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

51. The Attributable Contingency Fees are therefore not "proceeds" of property acquired by the Estate before the commencement of the case and are therefore not subject to any lien resulting from the LIG Note, the LIG Security Agreement or any of the Pre-Petition Credit Documents.

52. LIG has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

53. A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the LIG Note, the LIG Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

3561550.1

54. This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

55. The Trustee is entitled to a declaration that LIG does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(b).

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to 11 U.S.C. § 552(a) that the CF Holdings Lien Does Not Attach to the Attributable Contingency Fees)**

56. Plaintiff repeats and realleges the allegations of paragraphs 1 through 55, as though fully set forth herein.

57. The CF Holdings Note and the CF Holdings Security Agreement together purport to grant a security interest to CF Holdings in the Attributable Contingency Fees.

58. Pursuant to 11 U.S.C. § 552(a), property acquired by the Estate or the Debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

59. Under applicable law, the Attributable Contingency Fees are property acquired by the Estate after the commencement of the case and are therefore not subject to any lien resulting from the CF Holdings Note, the CF Holdings Security Agreement or any of the Pre-Petition Credit Documents.

60. CF Holdings has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

61. A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the CF Holdings Note, the CF Holdings Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

3561550.1

11

62. This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

63. The Trustee is entitled to a declaration that CF Holdings does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(a).

**SIXTH CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to 11 U.S.C. § 552(b) that the CF Holdings Lien Does Not Attach to the Proceeds of the Attributable Contingency Fees)**

64. Plaintiff repeats and realleges the allegations of paragraphs 1 through 63, as though fully set forth herein.

65. The CF Holdings Note and the CF Holdings Security Agreement together purport to grant a security interest to CF Holdings in the Attributable Contingency Fees.

66. Pursuant to 11 U.S.C. § 552(b), the "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case is subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

67. The Attributable Contingency Fees were generated solely due to the acts of the Debtor after the Petition Date, and therefore, as of the Petition Date, no lien in the proceeds of the Attributable Contingency Fees had attached.

68. Under applicable law, the Attributable Contingency Fees are not "proceeds" of property acquired by the Estate or the Debtor before the commencement of the case that would be subject to any lien resulting from any security agreement entered into by the Debtor prior to the Petition Date.

69. The Attributable Contingency Fees are therefore not "proceeds" of property acquired by the Estate before the commencement of the case and are therefore not subject to any

lien resulting from the CF Holdings Note, the CF Holdings Security Agreement or any of the Pre-Petition Credit Documents.

70.     CF Holdings has asserted a right to the Attributable Contingency Fees pursuant to the Pre-Petition Credit Documents.

71.     A present, justiciable controversy exists regarding whether the liens purportedly granted pursuant to the CF Holdings Note, the CF Holdings Security Agreement or any of the Pre-Petition Credit Documents granted enforceable security interests in the Attributable Contingency Fees.

72.     This Court is authorized to resolve this dispute pursuant to 11 U.S.C. § 552(a) and Fed. R. Bankr. P. 7001(2).

73.     The Trustee is entitled to a declaration that CF Holdings does not have a valid security interest in the Attributable Contingency Fees under 11 U.S.C. § 552(b).

**WHEREFORE**, the Trustee respectfully requests that the Bankruptcy Court enter judgment against CFII, LIG and CF Holdings and award the following relief:

  A.    On the First Claim for Relief, declaring that CFII does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(a);

  B.    On the Second Claim for Relief, declaring that CFII does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(b);

  C.    On the Third Claim for Relief, declaring that LIG does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(a);

  D. On the Fourth Claim for Relief, declaring that LIG does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(b);

  E. On the Fifth Claim for Relief, declaring that CF Holdings does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(a);

  F. On the Sixth Claim for Relief, declaring that CF Holdings does not hold valid and enforceable security interests in the Attributable Contingency Fees under 11 U.S.C. § 552(b);

  G. On all claims, awarding such other relief as is just and proper.

Dated: New York, New York  
   August 24, 2020

GOLENBOCK EISEMAN ASSOR  
BELL & PESKOE LLP  
711 Third Avenue  
New York, New York 10017  
Telephone: (212) 907-7300  
Facsimile: (212) 754-0330  

By: /s/ Michael S. Weinstein  
   Michael S. Weinstein

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*

3561550.1

14